J. P. Smith Co., Inc. *vs.* Wexler Construction Company, Inc. & others.

Middlesex.   December 7, 1967. — January 24, 1968.

Present: Wilkins, C.J., Spalding, Whittemore, Spiegel, & Reardon, JJ.

*Public Works. Jurat. Contract*, Building contract, Waiver. *Evidence*, Extrinsic affecting writing. *Waiver.*

Where a statement of claim filed by a corporation under G. L. c. 149, § 29, was signed in its behalf by its president and recited that the account set forth was "just and true," and the attached jurat of a notary public recited that the president, after being "duly sworn," "acknowledged said instrument to be the free act and deed of" the corporation, it was proper in a proceeding under § 29 to enforce the statutory security to prove that in fact, after the notary had sworn the president, the notary inquired whether the recitals in the statement of claim were true and, upon receiving an affirmative answer, signed the jurat; and upon such proof the statement of claim was adequate as a "sworn" statement. [552, 554]

Findings by a master in a suit in equity supported conclusions that a subcontractor and a sub subcontractor on a building construction project waived provisions of their written contract requiring prior notice and an order in writing for extra work by the sub subcontractor and orally agreed, respectively, to perform and pay for extra work by the sub subcontractor necessitated by changes made by the architect in certain appliances. [554-555]

Intervening bill in equity filed in the Superior Court on December 7, 1964.

The suit was heard by *Fairhurst*, J., on a master's report.

*Samuel H. Cohen* (*R. Shedrick Meek* with him) for the plaintiff.

*Barry J. Walker* for the defendants.

Whittemore, J.   J. P. Smith Co., Inc. (Smith) was an intervener in proceedings brought by another corporation, not presently concerned, to obtain the benefit of the bond given by The Travelers Indemnity Company (Travelers) under G. L. c. 149, § 29, as security for the payment for

work and materials by the contractor and subcontractors on a public school building in Framingham. Smith was a sub subcontractor of Rusco Products of Massachusetts, Inc. (Rusco), but was not subject to the bidding procedures of G. L. c. 149. Rusco had the aluminum window and window wall subcontract with the general contractor, Wexler Construction Company, Inc. (Wexler). The final decree on Smith's claim established Rusco's indebtedness and ordered that it pay Smith an amount with interest totaling $10,830.01. Smith's bill was dismissed against Wexler and Travelers. The facts are stated in a master's report.

1. The first issue on Smith's appeal is the validity of the statement of claim filed by it under G. L. c. 149, § 29. The judge ruled that it was invalid as not being "a sworn statement of . . . claim" as the statute requires. Smith's statement of claim recited that "the . . . account attached in the amount of $13,125.10 is a just and true account of the amount due." The statement of claim was subscribed, "J. P. Smith Co. Inc. By John P. Smith, President." There is attached an acknowledgment which in one respect is in unusual form.[1]

The master excluded certain testimony which he set out in full and which he stated that he would have believed had it been admitted. Thus, in effect, there were findings, ruled by the master and the court below to be not relevant, that the acknowledgment form was not a true record of what had occurred; and that, in fact, the notary having sworn Smith, inquired whether the recitals in the statement of claim were true; Smith answered in the affirmative and signed the statement before the notary; the notary then signed the certificate.

We hold that this testimony was admissible. The statute does not expressly require any jurat. In *Cook Borden & Co.*

---

[1] "On this 5th day of February 1964 before me personally appeared the said J. P. Smith, who being by me duly sworn, did say that he is president of the J. P. Smith Co. Inc., and that the seal affixed to said instrument was signed, sealed in behalf of said corporation by authority of its Board of Directors and said J. P. Smith acknowledged said instrument to be the free act and deed of said Corporation."

*Inc.* v. *Commonwealth,* 293 Mass. 174, 180–181, this court held that the statute nevertheless implies the requirement that there be attached "a certificate of the officer who administered the oath" and that the statement of claim without a jurat was invalid. A form of jurat was attached but it was unsigned. Evidence was offered that a notary had taken the oath of the signing officer. The opinion noted the split of authorities elsewhere and said that to hold that there need be no jurat attached would open the door to fraud difficult to detect. It noted that the "sworn statement" is designed in part to be the basis of action by others who are entitled to like relief and by public officers. Accord, *Valentine Lumber & Supply Co.* v. *Thibeault,* 333 Mass. 352, 359–360.

The happenings expressly declared in the certificate attached to Smith's statement of claim are sufficient to remove the risk of fraud. The statement asserts that the account is just and true; the certificate recites that the signing officer was sworn. The formality of an appearance before a notary and the taking of an oath were in themselves substantial assurance of a true claim. In the circumstances an acknowledgment that the statement was the free act and deed of the corporation implies an assertion of the signing officer that he is not making a careless or false presentation on behalf of his corporation. The contemporaneous signing by the notary assures that the statement was solemnized by the officer on the date stated, and is a basis for distinguishing this case from the *Cook Borden* case. So far as the implications of that case are to the contrary of our present holding we do not follow it.

In *Jackman* v. *Gloucester,* 143 Mass. 380, 381, the court allowed evidence that the person who signed the jurat without designation was in fact a justice of the peace. In *Carroll Hunnewell, Inc.* v. *Southboro Constr. Corp.* 343 Mass. 667, 669, we allowed evidence of error in the recital of the jurat that a named person other than the signing officer had signed the claim.

This case resembles *Dalbey Bros. Lumber Co.* v. *Crispin,*

234 Iowa, 151. There the claimant signed a certificate at the end of the claim that he was on oath and that the statements were true. A form of jurat was left blank. Below the jurat a notary public recorded that the claimant had appeared and acknowledged that the execution of the instrument was his free act and deed. A majority of the court allowed the claim concluding that the claimant was conscious of the fact that he was swearing to the correctness of the lien and account.

The defendants contend that the jurat may not be amended if it is not ambiguous. Although in this case the notarys certificate is a straightforward statement, the statement of claim as a whole raises a doubt as to what happened. There is no occasion to swear one who is making an acknowledgment. The recital that the officer was sworn implies an oath for other purpose than to acknowledge the instrument. As the statute requires a sworn statement of claim, the reasonable suggestion of this certificate is that the event may have been otherwise than stated in the certificate. All the purposes of the statute will be served to allow the notary and the affiant to testify to what did occur. See *Di Fruscio* v. *New Amsterdam Cas. Co. ante,* 360, 361–362.

This being done in this case, the claim is shown by a sworn statement, adequate to establish rights of the sub subcontractor against the statutory security. *Powers Regulator Co.* v. *Joseph Rugo, Inc.* 348 Mass. 233, 234.

2. One of Smith's claims for an extra is contested. Rusco's subcontractor, Modu-Wall, Inc., was to fabricate window frames with drip caps to divert water. The architect at the request of Modu-Wall changed the design of the drip cap so that Modu-Wall, at a savings to it, could supply a cheaper member that had to be screwed onto the window frames after erection. This necessitated extra work by Smith and the cost to Smith was "much greater." Smith requested of Rusco "an order in writing for this extra," but had not received it prior to receiving on January 17, 1964, a telegram reading, "Have men on job Monday re angles

drip caps or Rusco will perform and back charge you." Smith replied, "Please elaborate. We have had men on the job the last two days." Also two or three of Rusco's agents had orally promised to pay for the extra work.

The defendants contend that Smith is barred from recovery because Smith did not comply with provisions for prior notice and written order in the Rusco-Smith contract made in the statutory form. There is nothing in this. The master's findings justify the conclusion, stated by the judge, that "both parties . . . waived any conflicting provisions . . . [of their written contract] and impliedly expressed their consent . . . [respectively] to perform and pay for the new work." The parties may orally agree for work to be done outside their written contract. *M. L. Shalloo, Inc.* v. *Ricciardi & Sons Constr. Inc.* 348 Mass. 682, 685–686, and cases cited.

The informality of the order to Smith does not mean that the work was outside the scope of the bond given under § 29. There is no contention that Smith's work was other than "labor performed or furnished" in the construction of the building.

3. The final decree is reversed. A stipulation of the parties is applicable to determine the final decree in the light of the foregoing rulings. In accordance therewith a final decree shall enter providing that Rusco is indebted and shall pay to Smith the sum of $11,645.67 plus the drip cap claim of $1,653.75 or a total of $13,299.42 with interest from December 1, 1964, and that if such total is not paid forthwith by Rusco it shall be recoverable from Wexler and from Travelers.

*So ordered.*